Before the clerk calls the cases, I would like to remind counsel for the appellants that it would be nice if you would remind us the amount of time, if any, that you are reserving for rebuttal. With that, you may call the first case. Case No. 15-6322, Talakoy LP v. Black Fire Energy, et al. Oral argument not to exceed 15 minutes per side. Mr. Waters for the appellant. Thank you. Your Honor, we have reserved five minutes of the 15th. If it may please the court, Your Honor, we are asking that we file this appeal to set aside a ruling by the district court, the Eastern District of Kentucky, pertaining to an arbitration award that was entered into adverse to the rules, the contract between the parties, the rules of the Triple A, which was approved by the Supreme Court. It was a governing organization to be used and, in many other ways, violated the due process rights of my clients, the defendants, Black Fire Energy. The contract between the parties is very clear that the arbitration must be conducted by a panel of three arbitrators unless the parties specifically agree to the use of a single arbitrator. Moreover, the arbitration has to be conducted by the Triple A, American Arbitration Association, and pursuant to the rules of the Triple A. None of this happened. This is very important because Black Fire was unrepresented. They would be handling the arbitration pro se, which they can do under the Triple A rules. But what they would expect to receive is a notice of arbitration, a demand for arbitration from the Triple A. That's the way that is initiated. Instead, they were never notified at all. Instead, Talakoi engaged unilaterally a single arbitrator who conducted some type of proceeding. I think it was a telephone proceeding, as I have come to gather, and took evidence, apparently, only from the principles of Talakoi, and then made a ruling that, not surprisingly, only tells one side of the story. So your client did not receive any notice whatsoever, even in the preliminary stages of trying to agree upon a single arbitrator or arbitrator group of three? That is correct, Your Honor. In fact, the whole reason that the parties went to arbitration was at the behest of the defendants, of our clients. They filed suit in a federal court. We moved to dismiss because there was an arbitration clause. That was granted. The case was dismissed. Now, Black Fire is awaiting a demand for arbitration. The only communication that ever came was from counsel from Talakoi to me, and they asked, Can we agree on a single arbitrator? I said, I'm not going to be involved in the arbitration. You'll be dealing with somebody else or with them directly. Why wasn't that enough notice? Because that notice wasn't communicated to Black Fire, because I was not their counsel. I was not representing them on that. You were their counsel on other things. Right, on other ... At that exact moment, you were their counsel on other things. That's right. That's right. Wouldn't a normal person give that information to their client on other things that, oh, by the way, Talakoi has contacted us about arbitrating? We had had considerable issues in the case about Talakoi trying to get us to accept service, and we made it very clear that we were not. That's why it was important to be very clear and to tell them that you have to go through the proper processes here and simply communicate with them, or if they did engage other counsel, then engage with that counsel. So this never occurred. Moreover, it's not, and this is an error that the district court made, it's not a situation where you may use a single arbitrator unless somebody objects. No, you must use three arbitrators unless they specifically agree. The contract's very clear on that. So if, for whatever reason, Talakoi felt like, well, we're going to have to go unilateral on this, which there certainly would be no reason to do so, but they would have had to engage three arbitrators through the AAA. What the evidence shows in this case is that one of the defendants, Mr. Stoden, contacted the AAA from time to time inquiring and was always told, no, we don't have any case, they have no record of this matter. And that is, of course, how it went, because they did not go through the AAA, even though the contract specifically requires this. They've taken the position that, well, the arbitrator they used, he used the rules of the AAA, but just didn't have an arbitration administered by the AAA. But that doesn't comport with the rules, because under the rules, Rule 2 specifically requires that the arbitration be administered by the AAA. So you can't just pick and choose among the rules. I mean, the contract is very clear. So Blackfire, unrepresented, is waiting for communication from the AAA. It never happens. Instead, sometime later. Blackfire received, could hypothetically Blackfire receive communication from Talakoi. Would that be enough to comply with the requirements that there be an agreement on the arbitrators, et cetera? If Talakoi had communicated directly with Blackfire and said, do we have agreement on using a single arbitrator, and Blackfire said yes, and they chose one, that certainly would have sufficed. I mean, none of that happened, but that would have worked. Wasn't there something in the record that indicated that the parties had some communication at some point about there being a single arbitrator? Am I wrong about that? No, other than the inquiry from Mr. Wicker, who was Talakoi's counsel, an inquiry to me whether or not I would agree, and my response back was, I'm not involved with the case, so no. So you've also got this issue of timeliness. Yes. So there was a date by which Blackfire did become aware of the award. Yes. And I'm assuming that date in Blackfire's view is the December 23? December 23, when the suit, the complaint was filed by Talakoi to enforce the arbitration. And the act requires that any party wanting to object or accept from an award has to do so within three months of the award being filed or delivered. Yes. And the district court found that, I guess, filed equals the date that it's issued. Yes. And you obviously take exception to that. Well, that's right. I mean, the district court initially said it was the date that this was done in the closed case, but then in the end the district court agreed with us that that's not the case and said that it's the date that the arbitrator issued his opinion. But that opinion was never communicated to Blackfire, and so what Section 12 requires is that it be filed or delivered to all the parties. If one takes it that, well, it was filed when arbitrator Karam made his ruling, then when was it delivered? And the answer was it never was. And the district court said, well, it was apparently delivered to the plaintiff, and so since it was delivered to the plaintiff, it must have been delivered to the defendant as well. But there's no certificate of service. There's no indication anywhere in the record that it was ever delivered, and it wasn't delivered. And that's the problem, is that if you take this situation, then you could do an arbitration in a vacuum. Don't invite the other side. Wait several months and then spring it on them. It's like, oh, well, guess what? This came out months ago. Now you don't have any opportunity. So the language says filed or delivered. Yes. So you're saying there was no delivery because service did not occur. Where would you file one of these? Yeah, that's my next question about filing. I'm sorry. No, no, that's it. Really, I wanted to focus on filing. Typically in an arbitration, you have all parties participating, and the filing would probably be an issuance by the arbitrator to the participants, attorneys for both sides, or if they're pro se, then to them. And that filing under Rule 49 could be accomplished a number of ways. It could be formal service through certified mail, but it could also be if the parties have agreed to e-mail or fax. There's a number of ways that that could be communicated. That's considered filing, though? No, I apologize. No, that would be the delivery. The filing is typically what most courts have found is the issuance. So you have the issuance of the opinion of the award, and then you have the delivery. So is it not filed with the AAA if it's a AAA-sanctioned arbitration? This one was not. The AAA was not involved. But in general? But in general, yeah. If the AAA was doing it, then the AAA would be the party. They would take the arbitrator's ruling. They would file it in their file because they're the organizer, the manager of the file, and then they would serve all the parties. Is that mandated by the rules or the act that the AAA do that? Yes, that's in the rules, in the AAA rules. Rule 4, in particular, pertains to how things are served. Okay. You'll have your rebuttal time. Thank you. Thank you, Your Honors. Good morning. Good morning. May it please the Court, my name is Justin Kanapka. I represent the appellees. As the Court touched on there at the end, the most important issue in this appeal is the timeliness of Blackfire's motion to vacate. The record here evidences six occasions on which Blackfire received a copy of the award, thereby triggering the filed or delivery language in Section 12 and the three-month time limitation for Blackfire to file its motion to vacate. The first instance of delivery of the award, as the Court mentioned, was the issuance of the award. This has been the standard in this circuit for filed or delivered under Section 12 of the arbitration. But I understand that those cases involved both parties being present when the arbitrator decided the case. Yes, Your Honor, that's true. But as I mentioned, there's five other instances in which they received the award. All right, well, let's take that one out. How can you count that first one if they weren't there? How can you say that should be the date? Because the arbitrator issued the award on that date, he didn't enter it on that date, and we received a copy of it in the mail. So it's our position that a copy was placed in the mail to all parties. The arbitrator specifically found that the Blackfire parties received notice of the arbitration. That's the arbitrator's determination. A demand for arbitration was sent, and they chose not to appear. But even after receiving notice and failing to appear, the arbitrator didn't enter a default award under the AAA arbitration rules. He took testimonial and documentary evidence from the Talakoi parties before entering his reasoned decision. But even moving to the next instance in which the Blackfire parties received notice of the award, as required under Section 12, was when Talakoi filed its motion to enforce in what is referred to in Blackfire's appellate brief as Talakoi 1, a closed case filed in 2013. That motion to enforce included a copy of the arbitration award, and that motion to enforce included a certificate of service signed by Kent Wicker of my office, indicating that not only did Blackfire's current counsel in this case and former counsel in that case receive ECF notification of the award, but the award was also placed in the mail via certified mail to each of the Blackfire parties. And this was on October 24th. Well, are we talking about certified mail return receipt requested or just certified mail? Certified mail. No return receipt is in the record. But if the court is looking for a return receipt, the third instance is when the return receipt is evidenced. When was that? When was that? On November 13th, as evidenced by the certified mail receipts attached to Talakoi's complaint in this matter. Talakoi placed a copy of the arbitration award in the mail to each of the Blackfire parties, and the return receipt is evidenced also in Talakoi's complaint, signed by the Blackfire parties. Now, why was that? If you understood that service had already been made, why was it necessary to keep sending a copy of the award? Because, Your Honor, we were afraid of what happened in this case, is that they would refuse to accept service, much like they refused to accept notice of the arbitration award, the demand for arbitration, and refused to appear for the arbitration hearing. So there's evidence in the record that they refused to accept the demand, and these other instances, there's actual evidence of that? No, Your Honor, there is no evidence in the record to say that they refused to accept the demand. There is evidence in the record to say that they received notice, but failed to appear for the arbitration hearing, and that was found by the arbitrator. Well, based on what? That was found by the district court, too. I'm just wondering what the basis for that was. Well, Your Honor, I can point to no evidence in the record other than the arbitrator's determination that found that they received notice. How can we rely on a statement that they received notice if there's no evidence in the record to show that they received notice? Well, the arbitrator's decision in this case is granted great deference by this court, and the standard of view applicable. But it's also worth noting that Blackfire has never argued that the arbitrator in this case was corrupt or partial or exceeded his authority. So without challenging the arbitrator's conduct or his impartiality, I see no reason to dispute his determination that they received notice. How was the arbitrator selected? The arbitrator was selected by Talakoi after sending multiple requests to Blackfire regarding the arbitration and its schedule. Blackfire never objected. But how did Talakoi select this arbitrator? This arbitrator was just selected off of knowledge of, I guess, arbitrators in the general area. I'm not familiar with how it was selected, and there's nothing in the record to indicate exactly how it was selected. Well, don't the rules require that there be some agreed-upon arbitrator? No, Your Honor. The party's arbitration agreement does not specifically provide that it must be upon agreement. Well, the AAA rules. Do they provide that the parties have to have some that should be an agreed-upon arbitrator unless there is an agreement to opt out of? No, Your Honor. And then you end up with three arbitrators? AAA rules defer to the party's contract, and the party's contract provides that by an agreed-upon arbitrator or alternatively through a panel of three arbitrators in the event the parties are unable to agree upon an arbitrator. And in this case, Talakoi sent notice of its arbitration proceeding to Blackfire, requested to Blackfire's current counsel regarding the arbitration agreement, and Blackfire never objected. And upon that, it's reasonable. Is it that they didn't object, or did they have to agree? Your Honor, it's a reasonable interpretation of the party's agreement that failure to object provides authority for a single arbitrator to conduct the arbitration. Is that in the rules? In the AAA rules? Yeah. No, Your Honor. I'm not aware of that default rule in the AAA rules. But again, the analysis to be applied to an arbitration award is that the arbitrator acted within and even arguably within his authority under the contract and even arguably interpreting the contract. And even if this court is seriously convinced that he committed an error, there's still no reason to overturn it. It's been considered one of the narrowest standards of review in American jurisprudence. It sounds, though, that at least if you're taking it from the Blackfire perspective, that Talakoi self-selected an arbitrator who presumably was pro-Talakoi for whatever reason and handled this arbitration without notice to Blackfire. This is taking it from Blackfire's perspective, of course, and ended up with an award which may or may not have been given to Blackfire immediately but was given later on at least through some one of your six efforts to provide notice. So it sounds like, at least from Blackfire's perspective, that this was a sort of done deal, self-interested appointment of an arbitrator to reach a result that was pro-your client. Well, even assuming all those arguments taken from their perspective, the Federal Arbitration Act still requires them to object within three months of receiving the award. And the certified mail receipts attached to our complaint evidence that their agents received a copy on November 19th and November 28th. And these are signed receipts evidenced in our complaint. Okay, so who signed on November 19th and November 28th, did you say? Alice Weed signed on behalf of Blackfire on November 19th. And she is the same party who received service of the summons in this matter, and they have never objected to her authority. Is she, so far as you know, an employee of Blackfire? Is that what her role is, or what is her role? Yes, that is my understanding of her role. Blackfire is an entity set up by Alan Weed. His daughter, from my understanding, is the registered agent, and it was sent to her home address. And Alice Weed is Deborah's mother, and she signed for it. And again, they received service of the summons in this complaint, signed by Alice Weed, and they have never disputed her authority or contested service. In the second instance, the signed evidence that they received a copy of the award is on November 28th. And this is Gil Stephen Brown, a former president and member of Blackfire, who received two copies of the award. He received a copy on behalf of Blackfire, addressed to Blackfire, and he also received a copy for himself personally. And these certified mail receipts, again, are in the record attached to Tallaquah's complaint. Okay, and so your position then is that if we were to look at the November 19th and or November 28th, we would find notice, and then that is beyond the three-month period when Blackfire objected. They objected more than three months after those two dates. That's correct, Your Honor. No matter what contested view of filed or delivered under the Federal Arbitration Act we apply to this case, and even if we apply the new argument Blackfire presents before this court that delivery equals receipt, the evidence in this record evidences that they received a copy of the arbitration award at the very latest on November 28th, which places their March 4th motion to vacate six days out of time. And it is well-settled law that a failure to timely object forfeits the right to judicial review of an arbitration award. And based on this standard, Blackfire's attempt to vacate the arbitration award untimely must be denied. But there is even another event of service, notice of the arbitration award to Blackfire, and that's based upon the statements Blackfire made in its motion to vacate itself. In its motion to vacate, Blackfire acknowledges that Nicholas Stoden on October 27th received a copy of the award, and this is just three days after the motion to enforce was filed and the Certificate of Service signed by Kent Wickard was entered in the record. And now Nicholas Stoden contacted the AAA on November 4th. But what's important about his contact of the AAA on November 4th is that the Blackfire parties have represented below and have never disputed his authority that he was acting on November 4th on their behalf. These are their words, Your Honor. Nicholas Stoden was their agent. He was contacting the AAA within his authority as their agent to discuss the arbitration award. And this knowledge that Nicholas Stoden indisputably has of the arbitration award itself is imputed to his principles, the Blackfire parties. How do you know that Nicholas Stoden was contacting the AAA about this award? Because the evidence in the record attached to their motion to dismiss is a memorandum Nicholas Stoden sent to the AAA. And in that memorandum, Nicholas Stoden admits to receiving a copy of the arbitration award on October 27th, and he identifies the dollar amount awarded in the arbitration award. It's hard to imagine that he could have guessed the amount awarded by the arbitrator without actually receiving a copy. And then again, he admitted it. And authorizing and ratifying Nicholas Stoden to contact the AAA imputes this knowledge upon all the Blackfire parties. It is well-settled law that an agent's knowledge is imputed upon the principal so long as he is acting within their authority. And by claiming that Nicholas Stoden and acknowledging that Nicholas Stoden was contacting the AAA on their behalf, this was certainly within the scope of his authority. So Nicholas Stoden's knowledge, by their own admission, on October 27th is imputed upon the Blackfire parties, and the clock begins ticking at that time. And their March 4th motion to vacate is untimely. And that running from October 27th, that October 27th date, it still puts their motion to vacate 41 days out of time. So no matter which way we slice it, the record evidences that filed or delivered under Section 12 of the Federal Arbitration Act has been satisfied. They were aware of the award, and they sat on their right to file a motion to vacate. If we assume for the moment, contrary to your argument, that their objection is timely, that they have filed within the three-month period, why are they not correct that they did not receive an arbitration that complied with either their agreement or the AAA arbitration rules? So even if we set aside the timely requirement, Section 10 of the Arbitration Act has been considered the exclusive grounds to vacate an arbitration award. Section 9 of the Federal Arbitration Act requires that the court, the district court, must grant confirmation unless an arbitration award is set aside under Section 10 or modified under Section 11. And here we're only dealing with Section 10. And there are four elements to vacating an arbitration award under Section 10. Talakoi has not argued any. In fact, the district court below had to assume that their arguments were placed under Section 10. But even if we place the arguments they present today, which are not presented under Section 10, under this framework, they fail. And they fail because the party's arbitration agreement did not require that the party submit to an administered arbitration agreement. It's very common for parties to submit to a non-administered agreement. The form arbitration provision— The rules of the American Arbitration Association, right? Yes, Your Honor. And the rules of the American Arbitration Association, cited by Blackfire, provide that it shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so. And on a motion to vacate, it is the party's, the movement's, burden to satisfy one of the most narrow standards of review in American jurisprudence to show that the arbitration award should be vacated. And Blackfire has submitted no authority that the arbitrator in this case was not authorized to do so by the AAA. There is no evidence in the record, nor have they ever disputed, not once, that the arbitrator in this case, retired Judge Edmund Karam, was not authorized by the AAA. And with it being their burden, this is fatal to their argument. But, again, the arbitration agreement between the parties did not provide that it be administered. The form arbitration agreement between the AAA provides expressly that the AAA agreement, or arbitration agreement, shall be administered by the AAA. And here, the parties expressly excluded this language from their arbitration agreement, and there's good reason to do so. Filing fees for a case like this for an administered arbitration exceeds $14,000 in addition to the arbitrator's fees. Removing this express language indicates a clear intent for the parties to not have an administered arbitration. According to the rules of the AAA, though, you agree is the requirement, right? I see my time's up. May I answer? Yes, you may. Yes, the agreement does say in accordance with the rules. In accordance with the rules of the American Arbitration Association. So, if we were going to spend time, which we cannot do now, what rule would you say, or rules, should we look at to see how the arbitrator should be selected in accordance with the rules of the AAA? Well, the selection of the arbitrator in this case is controlled by the parties' agreement. I know, and I keep looking at this paragraph, which is 7.2, and I understand that you're saying that, but it says in accordance with the rules of the AAA, and I just wanted to know what rules of the AAA I should look at so I didn't miss anything. It's not our position that the rules of the AAA supplant this. The parties agreed to the provision that's in the contract. Yeah, but the provision in the contract, I hate to harp on it, but you keep harping on it, so I'll harp back. Resolved within 30 days by the parties themselves, shall be settled through binding arbitration by an agreed-upon arbitrator, or alternatively, a panel of three arbitrators in the event the parties are unable to agree on one arbitrator. The arbitration will be conducted in Kentucky in accordance with the rules of the AAA. So I'm trying to figure out what rules of the AAA are being referred to in this paragraph 7.2, which both sides seem to have agreed to. Well, the rules of the AAA cover everything from filing of the award, but as far as the arbitration— What particular rule would you like me to look at in my leisure after this? There is no rule in the AAA that Tallacoy argues is applicable to this case as far as the appointment of arbitrators. Thank you. Okay. Thank you, Counselor. Your time has expired. Mr. Waters, you have your rebuttal. Thank you, Your Honors. Your Honors, let me answer that last question first. The applicable rules are the commercial arbitration rules of the AAA, and these rules, the selection is deferred to the contract, and the contract is very clear that the parties self-select from whoever is authorized. The AAA has a panel of acceptable arbitrators. The parties are free to choose among one of those individuals if they are going to choose a single arbitrator. If not, then it has to be three, and it would again be from that panel. Mr. Waters, I think we understand that. Okay. I'm going to break in only because what I'm concerned about is this timing thing. Yes. The merits are not going to get you very far if you're not going to be able to stay in court. What about this signed receipts on the 19th and the 28th of November that would make the filing late? That is a complete red herring, with all due respect, Your Honors. Something was sent, but that was not this arbitration award. According to their own certificates of service, they claim that this was done in October. Then in November, this is like a month later, something is received by Alice Weed, who is not agent for service to process, and Gil Stephen Brown. But was that this arbitration award? There is nothing in the record to indicate that it was. Now, Talakoi asked the Sixth Circuit to take judicial notice of that fact, and that was denied. This green card doesn't say anything. The assertion that this was the sending of this arbitration award would mean that their certificate of service, which indicates that they sent it to parties a month earlier, is either false or duplicative. There is nothing in the record to indicate that this was sent in November. And moreover, the district court did not find that. So we have no idea what was received, assuming something was received on November 19 by Alice Weed, or November 28 by Gil Stephen Brown. That is exactly right, Your Honor. We would know that it's inconsistent with the other documentary evidence, which would indicate that they first claimed to do this in October. Why is it inconsistent? Because on those green cards themselves, they have the date that they were sent, which is like November 21 or so, which is several weeks, almost a month, beyond what it says on the certificate of service. So what were the green cards attached to? We don't know. There is no indication. The district court did not find that, did not rely on that at all, and did not conclude that. So I don't believe there's anything in the record to indicate that these parties received this arbitration award on that date. And there's no indication that they – the only way they sent this motion to enforce was filing it in this closed case, which makes it available for those on ECF, which would not be these unrepresented parties. So what about the other argument that your opponent made, which was that this fellow Stoughton received notice? Well, Mr. Stoughton, at some point, and the record's not clear, but at some point he became aware that there was an allegation of an arbitration.  And there isn't any – there's no evidence at all in the record to indicate that he was accepting something or he had received something on behalf of the other defendants, and Mr. Stoughton is not an appellant. Was he an agent? No. No, I mean, he was – he had been involved with Blackfire, but he was not authorized by Blackfire to receive service or process at all. But he was a – was he not a senior-level person, maybe even most senior person at the company? He had been in the past, but at this point there was – he was not authorized for anything in particular, and there's nothing in the record to indicate that. The company was, at this point in time, a defunct company. Does somebody have to be authorized to receive process in order to make it effective under the notice provisions here, under the rules of the AAA? I didn't mean to cut you off, but under the rules of the AAA, I'm not sure. I would have to check that, but I would think that the answer is yes. It certainly wouldn't comport with due process otherwise. But the AAA apparently would allow the award to be issued to the parties, even if the person who's the service of process agent didn't happen to be there, right? That is correct. Of course, Mr. Stoughton was a defendant personally, not in his capacity with the company. Okay. Thank you very much, Your Honors. Mr. Waters, counsel, both of you, we appreciate your arguments today, and the case will be submitted.